IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

CRYSTAL MASSENGILL,

    Plaintiff,

v.                                                             Case No. 2:22-cv-02687-MSN-cgc

CONCORDE CAREER COLLEGES,
INC.,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND
STAYING CASE PENDING ARBITRATION**

---

Before the Court is Defendant's Motion to Compel Arbitration ("Motion," ECF No. 15), filed January 4, 2023. Plaintiff responded on February 1, 2023, (ECF No. 17), and filed a Declaration in Support of her response (ECF No. 18). Defendant filed its reply February 15, 2023. (ECF No. 21.) For the following reasons, Defendant's Motion is **GRANTED**.

## BACKGROUND

Plaintiff is a former student of Defendant. (ECF No. 1 at PageID 5.) According to her Complaint, Plaintiff enrolled in Defendant's nursing program because she wanted to become a registered nurse and was assured by multiple employees of Defendant (including Lisa Love, an Admissions Representative for Defendant) that the program was accredited. (*Id.* at PageID 3–4.) Plaintiff alleges that she specifically sought assurances about accreditation because she knew "it would be more difficult to get a job from a nursing program that was not accredited and that credits from an unaccredited program would be less likely to transfer to another school." (*Id.* at PageID 3.) About seven months into her studies, Plaintiff discovered to her dismay that she was not actually enrolled in an accredited nursing program, meaning the credits she earned were

"essentially worthless." (*Id.* at Page 5.) As a result of the alleged misrepresentations as to Defendant's nursing program, Plaintiff claims she suffered harms in the form of loan interest and fees, the loss of income she would have had were she not enrolled in the program, the loss of access to government benefits such as further Pell grants, and "the amount of her tuition, fees, expenses, books, and all other costs associated with the program itself." (*Id.* at PageID 5–6.)

Relevant to Defendant's Motion, Plaintiff signed an "Arbitration Agreement and Waiver of Jury Trial" ("the Agreement") on October 7, 2021. (ECF No. 16-1.) The Agreement provides in relevant part as follows:

> Any dispute I may bring against the College, or any of its parents, subsidiaries, officers, directors, or employees, no matter how characterized, pleaded or styled, shall be resolved by binding arbitration conducted in accordance with the Consumer Arbitration Rules ("Consumer Rules") of the American Arbitration Association (the "AAA"), and decided by a single Arbitrator mutually selected by parties to this Arbitration Agreement and Waiver of Jury Trial ("Agreement"). In the event the parties to this Agreement cannot agree on the selection of an Arbitrator, or as mutually desired by both parties in lieu of a mutual selection, the arbitration will be conducted by an Arbitrator selected by the AAA. The arbitration hearing will be conducted in Memphis, TN 38137.
>
> . . .
>
> Both the College and I explicitly waive any right to a jury trial. I understand that the decision of the Arbitrator will be binding, and not merely advisory. The award of the Arbitrator may be entered as a judgment in any Court having jurisdiction.

(ECF No. 16-1 at PageID 61.) Plaintiff initialed beside these paragraphs and signed this Agreement on October 7, 2021 as the "Student." (ECF No. 16-1 at PageID 62.) Ms. Love signed it as the "College Representative." (*Id.*)

On October 6, 2022, Plaintiff filed a Complaint alleging violations of the Tennessee Consumer Protection Act of 1977 as well as claims of fraud and fraudulent inducement to contract, negligent misrepresentation, promissory estoppel, breach of contract, general negligence, and breach of contract implied in law and unjust enrichment. (*Id.* at PageID 6–11.) She also requests damages and attorneys' fees amounting to at least $75,000. (*Id.* at PageID 11–12.) In response to

2

Plaintiff's Complaint, Defendant filed the Motion now before the Court seeking an order compelling Plaintiff to participate in arbitration pursuant to the Agreement. (ECF No. 15.)

## STANDARD OF REVIEW

"Under the [Federal Arbitration Act ('FAA')][1], a district court's consideration of a motion to compel arbitration is limited to determining whether the parties entered into a valid agreement to arbitrate, and does not reach the merits of the parties' claims." *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 487 (6th Cir. 2001), cert. denied, 535 U.S. 970 (2002). Because the FAA embodies "a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), courts must examine the contract at issue with that policy preference in mind. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000), cert. denied, 531 U.S. 1148 (2001). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25; *see also Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) ("It is a well-established rule that any doubts regarding arbitrability should be resolved in favor of arbitration."); *Stout*, 228 F.3d at 714 ("[A]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration."). At the same time, this "policy is to make 'arbitration agreements as enforceable as other contracts, but not more so.'" *Morgan v. Sundance*, 142 S. Ct. 1708, 1713 (2022) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12 (1967)). "Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation." *Id.* (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218–21

---

[1] Plaintiff has not contested Defendant's assertion that the FAA applies to this case. The Agreement also specifies that the FAA "shall govern the interpretation, scope, and enforcement of this agreement." (ECF No. 16-1 at PageID 61.)

(1985)).

"When faced with a motion to compel arbitration, a district court must follow the procedure set forth in section 4 of the FAA . . . . " *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003). "[I]f a litigant establishes the existence of a valid agreement to arbitrate, the district court must grant the litigant's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration." *Cronk v. TRG Customer Sols., Inc.*, No. 1:17-cv-00059, 2017 WL 5517259, at *3 (M.D. Tenn. Nov. 17, 2017) (citing *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005)). "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (citation omitted) ("The required showing mirrors that required to withstand summary judgment in a civil suit." (citation omitted)).

The Sixth Circuit generally uses four factors to determine when to grant a motion to compel arbitration: "(1) Whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are involved, whether Congress intended those claims to be arbitrable; and (4) if only some of the claims are subject to arbitration, whether the nonarbitrable claims should be stayed pending arbitration." *Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 371 (6th Cir. 2014) (citing *Fazio*, 340 F.3d at 392).

## **DISCUSSION**

As a threshold matter, Plaintiff objects that Defendant has not presented evidence of a valid contract under Fed. R. Civ. P. 56 because it provided only unauthenticated documents in support of its Motion. (ECF No. 17 at PageID 73.) The Court overrules this objection and considers the Agreement Defendant attached to its Motion to reflect the Agreement Plaintiff executed. First, "[l]ower courts throughout this Circuit recognize that the 2010 amendments [to Rule 56]

4

eliminated Rule 56's pre-2010 authentication standard." *Swank v. Hale*, No. 2:12-cv-1031, 2016 U.S. Dist. LEXIS 38706, at *7 (S.D. Ohio Mar. 24, 2016) (collecting cases). This Court agrees and adheres to the view that Rule 56 permits courts to consider materials that are not authenticated so long as the adverse party has an opportunity to object that the materials "cannot be presented in a form that would be admissible in evidence." *See id.* (quoting *Smith v. Interim HealthCare of Cincinnati, Inc.*, No. 1:10-cv-582, 2011 U.S. Dist. LEXIS 138885, at *11 (S.D. Ohio Dec. 2, 2011)). *See also* Fed. R. Civ. P. 56(c)(2). Significantly, "the objection contemplated by the amended Rule is not that the material 'has not' been submitted in admissible form, but[,] [rather,] that it 'cannot' be." *Id.* (alteration in original) (quoting *ForeWord Magazine, Inc. v. OverDrive, Inc.*, No. 1:10-cv-1144, 2011 U.S. Dist. LEXIS 125373, at *2 (W.D. Mich. Oct. 31, 2011)).

Here, Plaintiff has not argued that Defendant's documents cannot be authenticated or provided evidence to rebut the authenticity of Defendant's exhibits. In fact, Plaintiff seems to acknowledge that she electronically signed this Agreement: she admits to signing "electronic paperwork" required for her acceptance to the nursing program on the date listed in the document Defendant purports to be the Agreement. (*Id.* at PageID 70–71.) She also indicates that the Agreement "was presumably part of the electronic application paperwork [she] was rushed to complete . . . ." (*Id.*) Further, Plaintiff uses the language in the Agreement Defendant presents to support her arguments against Defendant's Motion. (ECF No. 17 at PageID 74–75; 78–79.) Consequently, the Court will consider Defendant's exhibits for purposes of this Motion.

I.     **Agreement to Arbitrate**

Having identified the Agreement, the Court next addresses Plaintiff's arguments as to its enforceability. Indeed, notwithstanding the FAA's policy preferences, "arbitration is a 'matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (quoting

5

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). "Because disputes over arbitrability are usually questions of contract formation and interpretation, federal courts should apply state law so long as it is generally applicable to all contracts." *Dawson v. Rent-A-Ctr. Inc.*, 490 F. App'x 727, 730 (6th Cir. 2012) (citing *Seawright*, 507 F.3d at 972 and *Fazio*, 340 F.3d at 393). "In Tennessee, 'an enforceable contract must result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, must be free from fraud or undue influence, not against public policy and must be sufficiently definite to be enforced.'" *Winn v. Tenet Healthcare Corp.*, No. 2:10-cv-02140, 2011 WL 294407, at *4 (W.D. Tenn. Jan. 27, 2011) (quoting *Thompson v. Hensley*, 136 S.W.3d 925, 929–30 (Tenn. Ct. App. 2003)).

Here, Plaintiff asserts that the Agreement is unenforceable "because it: (1) fails to provide adequate consideration; (2) is an unconscionable contract of adhesion; (3) was procured by fraud; and (4) is against public policy." (ECF No. 17 at PageID 70.) The Court takes each in turn.

### 1. Consideration

Plaintiff argues that the Agreement does not provide sufficient consideration because there is no mutuality as to arbitration; while the Agreement's language binds Plaintiff to arbitration, it leaves Defendant free to bring any claims it may have before a court. (ECF No. 17 at PageID 74.) Even assuming Plaintiff's reading of the Agreement is the correct one, however, the Agreement would not be void for lack of consideration. In Tennessee, "[w]hile consideration is necessary for every contract, mutuality of obligation is not required unless lack of mutuality will leave one party without consideration for his or her promise." *Ussery v. City of Columbia*, 316 S.W.3d 570, 579 (Tenn. Ct. App. 2009) (citing *Dobbs v. Guenther*, 846 S.W.2d 270, 276 (Tenn. Ct. App. 1992)). *See also Dobbs*, 846 S.W.2d at 276 ("That portions of a contract may apply to one party but not to others has no bearing on the mutuality of parties' obligations as long as consideration exists and all parties are bound to honor the contract."). Here, there is consideration for Plaintiff's agreement

6

to arbitrate in Defendant's waiver of a jury trial and provision of educational programs.

Plaintiff has cited *Domin v. River Oaks Imps., Inc.*, No. 11 C 3876, 2011 U.S. Dist. LEXIS 122807, at *10 (N.D. Ill. Oct. 24, 2011) and *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126 (7th Cir. 1997) for the proposition that an agreement whose language only obligates the employee to arbitrate ("I agree," I understand," etc…) cannot be read to similarly obligate the employer. (ECF No. 17 at PageID 74.) *Domin* and *Gibson* are out-of-circuit cases that do not consider Tennessee law. Even so, the Court in *Domin* was unable to identify *any* detriment to the defendant to counter the benefit it received from employee's agreement to arbitrate, even asking whether the defendant had offered employment as a potential exchange (it had not). *Domin*, 2011 U.S. Dist. LEXIS 122807, at *5–6. The Court in *Gibson* was similarly unable to find a promise made in exchange for the plaintiff's promise to arbitrate in the "Understanding" at issue in that case, and that Court also considered whether employment constituted consideration in exchange for that promise. *Gibson*, 121 F.3d at 1131. The Court therefore only reads those cases to stand for the proposition that—absent other promises in the agreement—a pure agreement to arbitrate that does not bind both parties lacks consideration. Here, there is another promise: Defendant's jury trial waiver.

Plaintiff also cites *Glass v. Tradesmen Int'l, LLC*, No. 5:19-cv-01331, 2020 U.S. Dist. LEXIS 28088, at *35 (N.D. Ohio Feb. 19, 2020) for the principle that "mutuality requires . . . that both parties 'be bound to the terms of any dispute that is required to be submitted to the arbitrator.'" (ECF No. 17 at PageID 74.) *Glass* conveys that mutuality is sufficient consideration. *Id.* at *33 ("[T]he Arbitration Agreement is supported by adequate consideration in [Defendant's] mutual promise to arbitrate."). But here, not only has Defendant not argued it would not be bound by disputes submitted to the arbitrator, but the Court also does not read the Agreement to support such an argument. (*See* discussion *infra* pp. 13–14.) Consequently, the Court does not consider these

7

cases, which are not controlling, especially persuasive in the matter. Plaintiff has not raised a genuine issue of material fact as to consideration.

### 2. Unconscionable Contract of Adhesion

#### a. *Buckeye Check Cashing*

Among its responses to Plaintiff's charges of unconscionability, Defendant argues that Plaintiff's arguments apply to all the enrollment documents—not just the Arbitration Agreement—meaning arbitration is the proper forum for resolving Plaintiff's challenges. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). The Court addresses this argument as a threshold matter,[2] since that case involves which issues a court has jurisdiction to decide when a party challenges an arbitration agreement contained within a larger contract.[3] In *Buckeye Check Cashing*, the Supreme Court confirmed that courts may adjudicate challenges to an arbitration clause itself, whereas an arbitrator should consider arguments as to the validity of the larger contract. *Buckeye Check Cashing*, 546 U.S. at 445–46 (citing *Prima Paint Corp.*, 388 U.S. 395). *See also Moran v. Svete*, 366 F. App'x 624, 630 (6th Cir. 2010) (quoting *Preston v. Ferrer*, 552 U.S. 346, 353 (2008)) ("[A]ttacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbiter's ken.").

Here, Plaintiff did not challenge any of the enrollment documents in her Complaint. In response to Defendant's Motion, however, she alleges that the Agreement itself is invalid because

---

[2] Defendant does not raise this issue in relation to Plaintiff's argument that the Agreement lacks consideration, presumably because consideration goes to the question of whether an agreement was actually concluded, whereas the rest of Plaintiff's arguments concern whether the agreement is valid. *Buckeye Check Cashing* only concerns the latter. *Buckeye Check Cashing*, 546 U.S. at 449 n.1. *See also Preferred Care of Del., Inc. v. Konicov*, No. 5:15-cv-88-KKC-EBA, 2016 U.S. Dist. LEXIS 59165, at *20 (E.D. Ky. May 4, 2016) (finding same).

[3] Defendant explains that Plaintiff signed the Agreement "[a]s part of her enrollment contract," (ECF No. 15-1 at PageID 41) and Plaintiff declares that "the paperwork consisted of multiple documents that totaled approximately 30 pages" (ECF No. 18 at PageID 86).

it is unconscionable, was procured by fraud, and violates public policy. (*See generally* ECF No. 17.) Plaintiff does not attack the rest of the enrollment contract on these grounds. Defendant acknowledges that Plaintiff attempts to target the Agreement specifically rather than the enrollment contract as a whole. (ECF No. 21 at PageID 98.) But it also maintains that Plaintiff only specifies the Agreement to avoid the mandate of *Buckeye Check Cashing*, while supporting her attacks on the Agreement using arguments that go to the execution of all the enrollment documents. (*Id.*; *Id.* at PageID 99.)

While Defendant's observations are well-taken as to some of Plaintiff's arguments, it is nonetheless clear to the Court that Plaintiff has challenged the Agreement itself, and not the enrollment contract. Accordingly, the Court finds it can consider these claims and will proceed to her arguments as to the validity of the Agreement.

    **b. Unconscionability**

Plaintiff argues that the Agreement is unconscionable for three reasons: (1) it was a contract of adhesion, (2) it "was presented to [Plaintiff] on a computer amidst all the other paperwork she was completing in a time sensitive situation," and (3) it is one-sided in binding only Plaintiff to arbitration. (ECF No. 17 at PageID 78.) Defendant counters that arbitration provisions lacking in mutuality of obligation are not unconscionable *per se* in Tennessee. (ECF No. 21 at PageID 96.) It further denies Plaintiff's suggestions of undue pressure, pointing out that the enrollment documents allowed her to cancel her enrollment within three business days of signing should she change her mind and arguing that she otherwise had plenty of time to read the enrollment documents before starting the nursing program. (*Id.* at PageID 97.)

Tennessee recognizes both procedural and substantive unconscionability, but "Tennessee courts . . . 'have tended to lump the two together,'" finding unconscionability "when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where

9

the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other." *Trinity Indus. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 170–71 (Tenn. Ct. App. 2001). Courts also consider "'whether the terms of the contract are beyond the reasonable expectations of an ordinary person . . . .'" *Berent v. CMH Homes, Inc.*, 466 S.W.3d 740, 756 (quoting *Taylor*, 142 S.W.3d 277 at 286). If the Agreement's terms are "'so one-sided that the contracting party is denied an opportunity for a meaningful choice . . . ,'" *Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 490 S.W.3d 800, 818 (Tenn. Ct. App. 2015) (quoting *Owens v. Nat'l Health Corp.*, 263 S.W.3d 876, 889 (Tenn. 2007)), then it is likely unconscionable. Plaintiff bears the burden of proof as to unconscionability. *See Sevier Cnty. Schs. Fed. Cred. Union v. Branch Banking & Trust Co.*, 990 F.3d 470, 483, 485 (6th Cir. 2021) (citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000)) (holding that the plaintiffs, as the party resisting arbitration, bear the burden of proving unconscionability).

The Court does not find that Plaintiff has met this burden. At the outset, the Agreement is not unconscionable because of the circumstances Plaintiff alleges were present at the time she signed it. As discussed, Plaintiff does not argue that she did not sign the Agreement. Rather, she argues that that fact should not matter because she signed it electronically under constrictive time restraints. (*See* ECF No. 17 at PageID 78.) To support the significance of those circumstances, she cites instances in which Tennessee courts have found various factors, "such as if the agreement was signed under compelling time constraints, did not provide the customer the right to revoke the arbitration clause within a reasonable period of time, the lack of explanation of binding arbitration, and if the arbitration agreement is buried within other paperwork being presented and signed at the same time," to be particularly important. (*Id.* at PageID 76.)

Here, the circumstances Plaintiff describes either do not implicate those factors at all or else do not do so to an extent that indicates unconscionability. First, even assuming Plaintiff signed

the Agreement under close time constraints (since Defendant directed her to take an exam that was scheduled shortly after a meeting during which she signed the enrollment paperwork), the significance of this factor is substantially outweighed by the fact that the Enrollment Agreement gave Plaintiff three business days to cancel her enrollment and thus revoke her enrollment paperwork. (*See* ECF No. 16 at PageID 58.) There is also no suggestion that Plaintiff inquired into or requested additional time and was denied it.

Second, Plaintiff states that "no one explained what [she] was signing or the meaning of binding arbitration to [her]," (ECF No. 18 at PageID 86), but nowhere alleges facts suggesting she asked questions about arbitration or the Agreement that were left unanswered. This omission is perhaps attributable to the fact that Plaintiff "has no independent recollection of completing an arbitration agreement" and "did not have time to review every page during the electronic signing . . . ." (ECF No. 17 at PageID 71.) But, as mentioned, Plaintiff does not deny signing the Agreement, and her lack of memory or failure to read the documents she signed are not sufficient to raise genuine issues. "[C]onvenient memory lapses do not create factual disputes that are genuine." *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 839 (6th Cir. 2021). And it is a "bedrock principle" of Tennessee law that a person is presumed to have read the contract he signs and be bound by its contents. *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011).

Third, while the Agreement was presented to Plaintiff alongside other documents, the Court does not find that it was "buried." The Agreement's underlined, bolded title reads "Arbitration Agreement and Waiver of Jury Trial." (ECF No. 16-1 at PageID 61.) The Agreement does not reflect a lengthy document brimming with legalese. Nor does its brevity (it is only two pages) suggest Plaintiff could easily overlook its meaning among the other documents she was signing; it required Plaintiff to fill in her full name twice and provide her initials twelve times beside relatively short paragraphs or sentences. (*See id.* at PageID 61–62.)

11

Finally, Plaintiff emphasizes the fact that she signed and submitted her paperwork electronically as an employee of Defendant scrolled through the documents. (ECF No. 17 at PageID 78.) But Plaintiff consented to an electronic signature, (ECF No. 16-1 at PageID 62), and she does not indicate that she objected to it verbally. Regardless, it is not clear to the Court why electronically submitting the Agreement renders it unconscionable. Plaintiff declares that the electronic medium of the documents meant she had no opportunity to change or bargain for the terms in the paperwork. (ECF No. 18 at PageID 86.) But such an arrangement simply describes an adhesion contract, which is not intrinsically unconscionable. (*See* discussion *infra* pp. 14.) In short, Plaintiff has not raised a genuine issue that the circumstances in which she completed the paperwork rose to a level of unconscionability.

Plaintiff's two remaining arguments for why the Agreement is unconscionable are more compelling, but ultimately also fall short. In essence, Plaintiff argues that the Agreement is unconscionable because it is a contract of adhesion under which only she is required to arbitrate her claims.[4] Before turning to whether such a contract is unconscionable, the Court must first determine whether Plaintiff's description accurately describes the Agreement. To that end, the Court first finds the Agreement can fairly be considered a contract of adhesion; Plaintiff does not argue that she tried to negotiate its terms, but Defendant does not directly contest Plaintiff's characterization that the Agreement was presented to her—a weaker party—on a "take-it-or-leave-it" basis.

Whether Plaintiff is the only one required to arbitrate her claims, however, is a more difficult question. While it is clear that Plaintiff must arbitrate any and all of her claims against

---

[4] While Plaintiff also argues the Agreement lacks consideration because there is no mutuality of obligation as to arbitration, the Court considers that argument distinct from this one, which asks whether an arbitration agreement that lacks mutuality of obligation as to arbitration is unconscionable.

Defendant, the Agreement does not explicitly identify the forum in which Defendant must bring any claims it may have, though it does foreclose the jury trial option. Nor has Defendant directly addressed whether it considers itself bound to arbitrate its claims—it merely argues that its jury trial waiver and educational services constitute consideration for Plaintiff's agreement to arbitrate.

In looking to the Agreement, the Court finds that, contrary to Plaintiff's contention, Defendant is also bound to arbitrate its claims. First, the language is explicit that Defendant waives any right to a trial by jury, (ECF No. 16 at PageID 61), and while this waiver alone does not simultaneously indicate a consent to arbitrate, its context within the Agreement does. The full paragraph containing Defendant's jury trial waiver says: "Both the College and I explicitly waive any right to a jury trial. I understand that the decision of the Arbitrator will be binding, and not merely advisory. The award of the Arbitrator may be entered as a judgment in any Court having jurisdiction." (*Id.*) This paragraph is set apart from the other paragraphs, and Plaintiff was required to initial beside it separately. Accordingly, it is only natural to read these three sentences together. When so read, it is evident that the second sentence builds on the first one—there will be no jury trial (because you (the Plaintiff) and I (the Defendant) have waived it), but there will be an Arbitrator whose decision will be binding. The specification of these two fora—a jury trial and arbitration—in such close proximity suggests that these are the *exclusive* fora applicable to the relationship between Plaintiff and Defendant. If Defendant were to try to avoid arbitration in the future, these sentences at the very least make Defendant's obligations ambiguous and, as Plaintiff notes, "Tennessee courts have implemented a rule of interpretation that 'language of the contract, where ambiguous, will be construed most strongly against the party who drew it,'" which, here, is Defendant. (ECF No. 17 at PageID 79 (quoting *Hanover Ins. Co. v. Haney*, 425 S.W.2d 590, 592 (Tenn. 1968).) In any event, even if Defendant sought to reserve for itself the possibility of a bench trial, the jury trial waiver takes some of the wind out of the sails of Plaintiff's comparison

to *Taylor v. Butler*, 142 S.W.3d 277 (Tenn. 2004), where the defendant explicitly reserved for itself any legal remedies beyond arbitration while restricting the plaintiff to arbitration.

Second, the Court is mindful of the instruction that "[i]n assessing whether an agreement to arbitrate has been made . . . 'courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Great Earth*, 288 F.3d at 889 (quoting *Stout*, 228 F.3d at 714). Given these considerations, the Court finds that Defendant is bound to arbitrate its claims under the Agreement.

Having determined the general nature and relevant terms of the Agreement—it is a contract of adhesion in which both parties must arbitrate their claims—the Court proceeds to whether it is unconscionable and ultimately finds that Plaintiff has not raised a genuine issue of material fact as to the Agreement's unconscionability. First, while the fact that a contract is one of adhesion is "significant" to the question of whether it is enforceable, adhesion contracts "are not *per se* unenforceable in Tennessee." *Berent*, 466 S.W.3d at 756. The reason contracts of adhesion might be suspect is that they are often presented to a party with very little bargaining power by a party with a lot of bargaining power. Such an unbalanced dynamic might indicate a situation in which the less powerful party does not really consent to the agreement, but signs it nonetheless because there is no meaningful choice but to do so. For example, courts in Tennessee have found arbitration agreements unenforceable when the plaintiff was asked to sign one to receive funeral services after the plaintiff's family member had already been embalmed, *Wofford*, 490 S.W.3d 800, and when the plaintiff was required to sign one in order to place her mother (who had dementia and was able to escape her previous facility) in a more secure facility, *Stancil ex rel. Gentry v. Dominion Crossville, LLC*, No. E2021-01378-COA-R3-CV, 2022 Tenn. App. LEXIS 296 (July 29, 2022).

14

Here, the Court assumes that Plaintiff was the weaker party. But she has not offered facts to suggest that she had no practical choice but to sign the Agreement. She does not argue that Defendant's nursing program was the only one she could have pursued; in fact, she suggests that she was interested in the program's accreditation because she would have chosen a different one if Defendant's was not accredited. (ECF No. 1 at PageID 3.) While an exam Plaintiff was directed to take was scheduled to take place soon after Plaintiff's meeting with Ms. Love, and thus caused parties to rush through the enrollment paperwork, there has been no indication that the test was only offered on that day. Even if that was Plaintiff's last chance to take that exam, which was required to proceed with enrollment, it occurred on a Thursday, and the next step in the admissions process did not occur until the following week, leaving Plaintiff at least two days in which to review the paperwork she signed and retract her agreement if she wished to do so.

Other indicia similarly counsel against a finding of unconscionability here. As indicated, both parties waived a jury trial, (ECF No. 16-1 at PageID 61), and the Court has found that both are subject to arbitration. Additionally, the Agreement provides for joint selection of the mediator and states that Defendant will cover arbitration costs that exceed the court filing fee. (*Id.*) The Agreement specifies that it does not apply to any "borrower defense claims" Plaintiff may file with the U.S. Department of Education. (*Id.*) Other than her contention that Defendant is not bound to arbitrate any of its claims, which the Court has rejected, Plaintiff does not point to any other provisions that limit Defendant's obligations or liability or otherwise favor Defendant. In ways already discussed, the Agreement does not "bury" important provisions, but rather requires Plaintiff to initial beside short, easy-to-understand paragraphs in a short, stand-alone document. These facts simply do not suggest a bargain with inequalities "so manifest as to shock the judgment of a person of common sense," or an agreement whose "terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the

other." *Trinity Indus.*, 77 S.W.3d at 170–71.

### 3. Fraud

In the alternative, Plaintiff argues that the Agreement was fraudulently induced because Ms. Love told her the nursing program was accredited despite knowing it was not so that Plaintiff would enroll in it, which Plaintiff did to her detriment. (ECF No. 17 at PageID 81.) Defendant retorts that while Plaintiff argues fraud in the inducement only as to the agreement to arbitrate (rather than the enrollment contract as a whole), the balance of Plaintiff's brief "is directed to the entirety of her transaction with [Defendant]." (ECF No. 21 at PageID 98.) And on a motion to compel, Defendant argues, the question for the Court is whether the *agreement to arbitrate* was procured by fraud, not whether the relationship between the parties was procured through fraud. (*Id.* at PageID 99.)

The Court agrees with Defendant that the relevant question is whether Plaintiff has raised a genuine issue of material fact that *the Agreement* was induced by fraud. *See also Buckeye Check Cashing*, 546 U.S. at 445–46 (confirming that courts adjudicate claims of fraud in the inducement if they challenge the agreement to arbitrate itself). To establish fraud in the inducement in Tennessee, "a plaintiff must prove five elements: '(1) [the existence of] a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; (5) an injury resulting from the reliance.'" *Blackburn & McCune, PLLC v. Pre-Paid Legal Servs.*, 398 S.W.3d 630, 644 (Tenn. Ct. App. 2010) (alteration in original) (quoting *Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 630 (Tenn. Ct. App. 2000)).

Here, Plaintiff has not raised a genuine issue of material fact at least as to the third element of this claim because she has not argued that Ms. Love's alleged misrepresentation was intended

16

to induce Plaintiff to sign the Agreement rather than just enroll in the nursing program. In fact, Plaintiff appears to argue that Ms. Love was indeed focused on enrollment, and not on the Agreement. (*See* ECF No. 17 at PageID 80 ("[Plaintiff] had explained to Lisa Love that she was only interested in an accredited program, so the false statement Lisa Love was clearly made [sic] in an attempt to induce [Plaintiff] to accept her position in [the nursing program] and attend classes, fulfilling the third element of fraud.").) While she concludes multiple times that there was fraudulent inducement of the Agreement itself, Plaintiff supports this conclusion by stating that she "has presented evidence establishing that *her attendance* was procured through fraud. Therefore, [Plaintiff] has provided grounds for revocation of the agreement to arbitrate." (ECF No. 17 at PageID 81 (emphasis added).) As discussed, this logic is misguided because evidence that Defendant fraudulently induced Plaintiff to attend its nursing program is not necessarily also evidence that it induced Plaintiff to sign the Agreement. Accordingly, this claim must fail.

### 4. Public Policy

Finally, Plaintiff avers that enforcing the Agreement would violate public policy because Plaintiff only enrolled in the program because of Ms. Love's deceptive behavior. (ECF No. 17 at PageID 82–83.) In other words, Plaintiff argues that Ms. Love's fraud voids the Agreement as a matter of public policy. Consequently, Defendant believes this claim is meritless for the same reason Plaintiff's claim of fraud must fail. (ECF No. 21 at PageID 99.)

If a contract contains arbitration provisions that violate public policy, it is not enforceable. *Buraczynski v. Eyring*, 919 S.W.2d 314, 319 (Tenn. 1996). In support of her arguments on this claim, Plaintiff cites to *Lowrey v. Tritan Grp. Ltd.*, No. 3:08-cv-00779, 2009 U.S. Dist. LEXIS 60312, at *8 (M.D. Tenn. July 15, 2009), in which the Court found that an arbitration agreement was not enforceable because it violated public policy. But in that case, the Court denied defendants' motion to compel arbitration because it was undisputed that defendants had entered

17

into a contract for services that required a license in Tennessee despite not having a license, and so had violated Tennessee law. *Id.* Plaintiff has not provided any grounds other than fraud—which the Court has already rejected for purposes of this Motion as it applies to the Agreement—as support for her contention that the Agreement is in violation of public policy. As a result, this claim must also fail.

### B. Scope of the Arbitration Agreement

The Court turns next to the scope of the Arbitration Agreement. The Arbitration Agreement is broadly written to include "any dispute" Plaintiff may bring against Defendant, "no matter how characterized, pleaded or styled." (ECF No. 16-1 at PageID 61.) When an arbitration clause is broadly written, "only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators." *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 650 (6th Cir. 2008) (quoting *Highlands*, 350 F.3d at 577). Further, "[t]he [FAA], 9 U.S.C. § 2, mandates that, 'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Ggnsc Louisville Hillcreek, LLC v. Estate of Bramer*, 932 F.3d 480, 484 (6th Cir. 2019) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25).

The Agreement specifically carves out disputes over the enforceability of the class action waiver it contains as well as any borrower defense claims Plaintiff may make to the Department of Education. (*See* ECF No. 16-1.) Plaintiff's claims are not related to these issues, and Plaintiff does not argue that her claims are not arbitrable under applicable state or federal law. Thus, all of Plaintiff's claims are within the scope of the Arbitration Agreement.

As to the last two factors set forth by the Sixth Circuit, neither are at issue. Plaintiff's

claims are based on state statutes and common law, not federal statutes, and all of Plaintiff's claims are subject to arbitration.

Based on the foregoing analysis, the Court finds that Plaintiff's claims must be arbitrated.

## II.     Stay or Dismissal

Section 3 of the FAA provides for a stay of court proceedings "until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  While courts have dismissed actions when referring all of the claims to arbitration, "dismissal typically is not appropriate when a party has requested a stay."  *Furnwood Farm, LLC v. Andersons, Inc.*, No. 5:22-227-DCR, 2022 U.S. Dist. LEXIS 201309, at *11–12 (E.D. Ky. Nov. 3, 2022) (citing *Ozormoor v. T–Mobile USA, Inc.*, 354 F. App'x 972 (6th Cir. 2009)).  Here, Defendant requests a stay.  Accordingly, the Court will stay these proceedings pending arbitration.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Compel Arbitration is **GRANTED**.  Plaintiff is hereby **COMPELLED** to arbitrate all pending claims against Defendant, and this matter is hereby **STAYED** pending the completion of arbitration.

**IT IS SO ORDERED**, this 7th day of July, 2023.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE